IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DEL'RON GLENN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 324-058 |
| | ) | |
| JERMAINE WHITE, Regional Director; | ) | |
| ANDREW MCFARLANE, Warden; RICKY | ) | |
| WILCOX, Deputy Warden Security; JOHN | ) | |
| DOES, Tact Squad Members; and JIMMY | ) | |
| KELLOM, Unit Manager, | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Plaintiff, incarcerated at Telfair State Prison ("TSP") in Helena, Georgia, has submitted to the Court for filing a complaint brought pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.   BACKGROUND**

Plaintiff names as Defendants: (1) Georgia Department of Corrections Regional Director Jermaine White, (2) TSP Warden Andrew McFarlane, (3) TSP Deputy Warden of Security Ricky Wilcox, (4) TSP Unit Manager Jimmy Kellom, and (5) "Tact Squad Member" John Does. (Doc. no. 1, pp. 1, 4, 8-9.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On March 21, 2024, inmates in TSP Unit C-1 refused to cooperate in a lockdown and an unidentified inmate stabbed Defendant McFarlane in the back of his head with a shank. (Id. at 9-10.) Plaintiff was not involved in the inmate disturbance in any way. (Id. at 10.) He was upstairs in Unit C-1, and the uprising occurred downstairs. (Id.) As Defendant McFarlane left the unit after being stabbed, he yelled, "Oh! I'm coming back and [fucking] over C-1." (Id. at 11.) Five minutes later, two cans of teargas deployed from the ceiling exhaust vent without warning, sending clouds of smoke throughout the unit, followed by twenty-five additional cans of teargas. (Id. at 11-12.) Deployment of the additional twenty-five cans was excessive because the inmates returned to their cells and were compliant after deployment of the first two cans. (Id. at 19.) Fear gripped Plaintiff as his breathing became more labored. (Id. at 12.) An hour after the last can of teargas was deployed, John Doe Tactical Squad member Defendants entered the unit wearing gas masks and armed with "monkey gloves." (Id.) Going one cell at a time, Defendant Wilcox opened each cell door in the unit and John Doe Defendants systematically entered each cell and brutally beat the inmates despite the inmates posing no threat or attempting any resistance. (Id.)

When John Doe Defendants entered Plaintiff's cell, he and other inmates were lying face down on the floor with hands outstretched and palms flat on the ground. (Id. at 12-13.) One John Doe Defendant pointed to Plaintiff and yelled, "That's him!" (Id. at 13.) A John Doe Defendant stomped on Plaintiff's hands, and another repeatedly and violently slammed Plaintiff's head against the concrete floor, rendering Plaintiff unconscious. (Id.) John Doe Defendants handcuffed Plaintiff, jerked him off the floor, and removed him from the cell. (Id.) A John Doe Defendant repeatedly punched Plaintiff in the face while wearing monkey gloves, which "caused severe bruising and swelling that left Plaintiff's face disfigured with both of

Plaintiff's eyes swollen closed and severely discolored." (Id. at 13-14.) The abuse ended when Defendant White recognized Plaintiff and said to the group, "Ya'll got the wrong guy, that's Glenn, get him to medical, now." (Id. at 14.)

Plaintiff "received deep lacerations to his face and a knot about the size of a golf ball protruded on his forehead, and numerous bruises and abrasions to his face and head." (Id.) Plaintiff was "punched in the face, unprotected, so much so, that he lost all feeling in his face" and his eyes were swollen shut. (Id. at 14-15.) Officers took Plaintiff to the medical unit, where he received sutures for the deep lacerations on his face and ibuprofen for pain. (Id. at 16.)

Defendant Wilcox was present with the John Doe Defendants during this entire operation and did nothing to intervene. (Id. at 14-15.) Defendants McFarlane and Kellom were present for the operation, located just outside the unit, and saw Plaintiff's beaten body as he exited. (Id. at 15.) Defendants White, McFarlane, Wilcox, and Kellom failed to take action to stop the abuse of Plaintiff and other inmates. (Id. at 19.) Defendants McFarlane and Kellom did not record the event or report it, in violation of applicable Georgia Department of Corrections regulations. (Id. at 15-16.)

Plaintiff filed a grievance that officials forwarded to the Georgia Department of Corrections Criminal Investigations Division. Because the grievance was referred to this division, officials closed the grievance on all levels including any appeal. (Id. at 3-4.) For relief, Plaintiff requests a declaratory judgment and monetary damages. (Id. at 19-20.)

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds Plaintiff has arguably stated a viable claim for deliberate indifference to his safety against Defendants White,

3

McFarlane, Wilcox, and Kellom in their individual capacities.  See Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015) ("An officer who is present at the scene and fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance." (alterations and citations omitted)); Forester v. Hodges, No. 4:12-CV-4094, 2014 WL 3974679, at *9 (N.D. Ala. Aug. 7, 2014) ("[T]he duty of an officer to protect inmates in their care from assault by fellow officers ha[s] been clearly established for years." (citing Post v. City of Fort Lauderdale, 7 F.3d 1552, 1560 (11th Cir. 1993))).  Further, the Court finds Plaintiff arguably states viable claims against Defendants White, McFarlane, Wilcox, and Kellom in their individual, supervisory capacities based on Plaintiff's allegations they (1) were aware of a history of widespread abuse regarding use of force at Telfair State Prison, (2) promoted an improper custom or policy regarding use of force against inmates, or (3) directed prison employees to act, or knew they would act, unlawfully and failed to stop them.  See Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990); Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999); Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).  In a companion Report and Recommendation, the Court recommends dismissal of the John Doe Defendants, as well as Plaintiff's official capacity claims for monetary damages against Defendants White and McFarlane.

## II.     INSTRUCTIONS

**IT IS HEREBY ORDERED** that service of process shall be effected on Defendants White, McFarlane, Wilcox, and Kellom.  The United States Marshal shall mail a copy of the complaint, (doc. no. 1), and this Order by first-class mail and request that Defendants waive formal service of the summons.  Fed. R. Civ. P. 4(d).  Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of personal service unless good cause can be shown for

failure to return the waiver. Fed. R. Civ. P. 4(d)(2). A defendant whose return of the waiver is timely does not have to answer the complaint until sixty days after the date the Marshal mails the request for waiver. Fed. R. Civ. P. 4(d)(3). However, service must be effected within ninety days of the date of this Order, and the failure to do so may result in the dismissal of any unserved defendant or the entire case. Fed. R. Civ. P. 4(m). Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate Defendants to effect service.

**IT IS FURTHER ORDERED** Plaintiff shall serve upon the defendants, or upon their defense attorney(s) if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court. Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendant or their counsel. Fed. R. Civ. P. 5; Loc. R. 5.1. Every pleading shall contain a caption setting forth the name of the court, the title of the action, and the file number. Fed. R. Civ. P. 10(a). Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by defendants. Upon being given at least five days' notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>. Defendants shall ensure Plaintiff's deposition and any other depositions in the case are taken <u>within the 140-day discovery period</u> allowed by this Court's Local Rules.

5

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Loc. R. 41.1. If Plaintiff wishes to obtain facts and information about the case from the defendants, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery). Plaintiff should begin discovery promptly and complete it within four months after the filing of the first answer of a defendant named in the complaint screened herein.

Interrogatories are a practical method of discovery for *pro se* litigants. See Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five questions. Id. Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, he should first contact the attorney for the defendant and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Loc. R. 26.5.

Plaintiff must maintain a set of records for the case. If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve their response to the motion within fourteen days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Loc. R. 7.5. Therefore, if Plaintiff fails to respond to a

6

motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

A response to a motion for summary judgment must be filed within twenty-one days after service of the motion. Loc. R. 7.5, 56.1. A failure to respond shall indicate that there is no opposition to the motion. Loc. R. 7.5. Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should a defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine issue as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these: any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

**While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case.**

SO ORDERED this 24th day of January, 2025, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA